**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7

**FILED**

SEP 2 9 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  GABRIEL R. CORTEZ, | No. C 09-03021 EJD (PR) |
| 12                Plaintiff, | ORDER GRANTING MOTION FOR |
| 13     vs. | SUMMARY JUDGMENT |
| 14 | |
| 15  MATTHEW L. CATE, et al., | |
| 16                Defendants. | |
| 17 ─────────────────────────── | (Docket No. 58) |

18          Plaintiff, a California inmate at the Pelican Bay State Prison ("PBSP") in

19   Crescent City, filed a pro se civil rights action under 42 U.S.C. § 1983 against PBSP

20   officials for allegedly unconstitutional acts.  The Court reviewed the complaint pursuant

21   to 28 U.S.C. § 1915A(a), and found four cognizable claims.[1]  Defendants Matthew L.

22   Cate, Everett W. Fisher, Douglas McClure, R. S. Marquez, Richard J. Kirkland, Robert

23   A. Horel, M. Castellaw, L. Polk, M. A. Cook, M. J. Nimrod, S. Wheeler, K. L.

24   McGuyer, K. Brandon, Troy Wood, J. A. McKinney, David J. Barneburg, S. O'Dell

25   (sued as "S.O. Dell"), Del Higgerson, J.R. McBride, Gina Brame Derrico (sued as

26   ───────────────────────────

27          [1] After the Court dismissed some claims and granted leave to amend deficiencies
in other claims, Plaintiff filed notice that he wished to proceed solely on the four
28   cognizable claims.  (See Docket No. 18.)  The case was reassigned to this Court on
April 25, 2011.  (See Docket No. 63.)

1  "Genna Brame Derrico"), and T. K. Rosenkruns have moved for summary judgment.

2  (Docket No. 58.) Plaintiff filed an opposition, and Defendants filed a reply.

3

4  **DISCUSSION**

5  **A.    Standard of Review**

6        Summary judgment is proper where the pleadings, discovery and affidavits

7  demonstrate that there is "no genuine issue as to any material fact and that the moving

8  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will

9  grant summary judgment "against a party who fails to make a showing sufficient to

10  establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial . . . since a complete failure of proof

12  concerning an essential element of the nonmoving party's case necessarily renders all

13  other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact

14  is material if it might affect the outcome of the lawsuit under governing law, and a

15  dispute about such a material fact is genuine "if the evidence is such that a reasonable

16  jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

17  477 U.S. 242, 248 (1986).

18        Generally, the moving party bears the initial burden of identifying those portions

19  of the record which demonstrate the absence of a genuine issue of material fact. See

20  Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof

21  on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact

22  could find other than for the moving party. But on an issue for which the opposing

23  party will have the burden of proof at trial, the moving party need only point out "that

24  there is an absence of evidence to support the nonmoving party's case." Id. at 325. If

25  the evidence in opposition to the motion is merely colorable, or is not significantly

26  probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

27        The burden then shifts to the nonmoving party to "go beyond the pleadings and

28  by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

**United States District Court**
For the Northern District of California

1  on file,' designate specific facts showing that there is a genuine issue for trial.'"

2  Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make

3  this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

4        The Court's function on a summary judgment motion is not to make credibility

5  determinations or weigh conflicting evidence with respect to a material fact. See T.W.

6  Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

7  The evidence must be viewed in the light most favorable to the nonmoving party, and

8  the inferences to be drawn from the facts must be viewed in a light most favorable to

9  the nonmoving party. See id. at 631. It is not the task of the district court to scour the

10 record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279

11 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable

12 particularity the evidence that precludes summary judgment. Id. If the nonmoving

13 party fails to do so, the district court may properly grant summary judgment in favor of

14 the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District,

15 237 F.3d 1026, 1028-29 (9th Cir. 2001).

16 **B.**    **Legal Claims and Analysis**

17       In a lengthy complaint exceeding fifty pages with numerous attachments,

18 Plaintiff detailed a history of alleged harassment from January 2004 up to and following

19 his placement in the segregated housing unit ("SHU") as a validated prison gang

20 member of the Mexican Mafia ("EME") in July 2008. (Compl. at 5, 20.)

21       The following facts are not disputed unless otherwise indicated. Plaintiff was

22 first retained in the administrative segregation ("ad-seg") on February 3, 2004, pending

23 an investigation of his association with the EME. On July 7, 2004, the Classification

24 Committee placed Plaintiff in the SHU on the basis of his "ongoing involvement in

25 activities that foment violence among [inmates] and endanger [inmates] and staff alike."

26 (C. Trenary Decl., Ex. A.) There were two confidential memoranda filed in Plaintiff's

27 central file, the first dated October 8, 2003 and the second January 20, 2004, which

28 contain information connecting Plaintiff with the EME. (Id., Ex. B.) Plaintiff remained

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    in the SHU until March 7, 2006.

2         A formal investigation into Plaintiff's gang status was initiated on February 12,

3    2008, by the PBSP Institutional Gang Investigations Unit ("IGI").  The evidence in

4    Plaintiff's central file of his involvement with the EME was comprised of four

5    confidential memoranda, including the two mentioned above, which are summaries of

6    statements given by informants identifying Plaintiff as an active EME associate.  The

7    third memoranda was dated January 29, 2007, and the fourth was dated January 23,

8    2008, just a few weeks before the investigation was initiated.  Several of the informants

9    identified Plaintiff as a member of the "mesa," a particularly influential group of EME

10   associates which was "empowered by the EME to carry out the orders and enforce the

11   will of the EME on the General Populations Yards at [PBSP]."  (Id., Ex. B.)  Each of

12   these confidential reports was used as a "source item" in support of Plaintiff's

13   validation as a gang member.  (Id.)

14        On February 21, 2008, Plaintiff was informed of the source items through

15   confidential information disclosure forms, and then given 24 hours to prepare for an

16   interview with an IGI investigator to discuss the source items.  Cal. Code Regs. tit. 15, §

17   3378(c)(6).  On February 22, 2008, Plaintiff was interviewed by Defendants Sergeant D.

18   Barneburg and Correctional Officer J. McBride.  (Trenary Decl., Ex. C.)  A formal

19   validation package was submitted to the Office of Correctional Safety ("OCS") later the

20   same day.  The package included the source items and Plaintiff's written and oral

21   responses.  (Id.)  Special Agents E. Fischer, T. Rosenrkuns, and D. McClure reviewed

22   these items, and concluded that all four of the source items met the validation

23   requirements.  Plaintiff was validated as an EME associate on July 10, 2008.  (Id., Ex.

24   D.)  Plaintiff was informed of the validation on July 30, 2008, and that he would be

25   placed in the SHU as a consequence in accordance with Title 15, as being deemed a

26   severe threat to the safety of the institution.  Cal. Code Regs. tit. 15, § 3341.5(c).  On

27   that basis, Plaintiff was placed in the SHU for an indeterminate term.

28        Plaintiff submitted an inmate appeal on August 10, 2008, challenging his gang

1    validation and SHU placement. He complained that the CDCR had a practice of

2    validating inmates on the basis of mere allegations of gang activity. He requested

3    reversal of the validation, release from the SHU, and removal of the source items from

4    his central file. (Trenary Decl., Ex. F.) The appeal was bypassed at the first level and

5    denied at the second level. Plaintiff appealed to the Director's Level, which determined

6    that proper procedures were followed and that there was sufficient evidence to support

7    the validation. Accordingly, Plaintiff's appeal was denied at the Director's Level on

8    January 5, 2009.

9         The Court found the following claims were cognizable: 1) Defendants violated

10   Plaintiff's first amendment right to association; 2) Defendants placed Plaintiff in the

11   SHU in retaliation for exercising his First Amendment right to file grievances; 3)

12   Defendants violated Plaintiff's right to equal protection by discriminating against him

13   on the basis of race; and 4) Plaintiff's placement in the SHU violates due process.

14   **1.    Right to Association**

15        Plaintiff claims that his validation as a gang member violated his First

16   Amendment right to association because he was validated on the basis of an innocent

17   association with members of his own racial group, which "did not consist of and [was]

18   not in furtherance of any illegal prison gang activity whatsoever." (Compl. at 41.)

19   Defendants contend that this claim must be evaluated under the four factors set forth in

20   Turner v. Safley, 482 U.S. 78 (1987), which requires that Plaintiff show that there is no

21   reasonable relationship between the regulation or conduct being challenged and the

22   legitimate penological interests of the institution. Id. at 89.

23        Prison regulations that infringe a prisoner's constitutional right are valid so long

24   as they are "reasonably related to legitimate penological interests." Turner v. Safley,

25   482 U.S. 78, 89 (1987); see Pell v. Procunier, 417 U.S. 817, 822-23 (1974) (identifying

26   four central penological objectives as deterrence (by making incarceration undesirable),

27   protection (by quarantining criminal offenders), rehabilitation, and ensuring internal

28   security of the prison facility).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    The Supreme Court recognized in <u>Turner</u> that imprisonment does not

2    automatically deprive a prisoner of certain important constitutional protections,

3    including those of the First Amendment. <u>Beard v. Banks</u>, 548 U.S. 521, 528 (2006).

4    But at the same time the Constitution sometimes permits greater restriction of such

5    rights in a prison than it would allow elsewhere. <u>Id</u>. As <u>Overton v. Bazzetta</u> pointed

6    out, courts owe "substantial deference to the professional judgment of prison

7    administrators." 539 U.S. 126, 132 (2003). <u>Turner</u> reconciled these principles by

8    holding that restrictive prison regulations are permissible if they are "reasonably

9    related" to legitimate penological interests, and are not an "exaggerated response" to

10   such objectives. 482 U.S. at 87.

11   The Supreme Court has identified four factors to consider when determining the

12   reasonableness of a prison rule: (1) whether there is a "valid, rational connection

13   between the prison regulation and the legitimate governmental interest put forward to

14   justify it"; (2) "whether there are alternative means of exercising the right that remain

15   open to prison inmates"; (3) "the impact accommodation of the asserted constitutional

16   right will have on guards and other inmates and on the allocation of prison resources

17   generally"; and (4) the "absence of ready alternatives", or, in other words, whether the

18   rule at issue is an "exaggerated response to prison concerns." <u>Turner</u>, 482 U.S. at 89-

19   90.

20   Defendants argue that Plaintiff's validation and SHU placement bears a

21   "reasonable relationship" to the legitimate penological interests of the institution

22   consistent with the <u>Turner</u> factors: 1) the prison has an obvious interest in deterring

23   gang activity in order to subdue threats before violence occurs, which often requires

24   preemptive measures such as gang validation; 2) Plaintiff's right of association was not

25   limited beyond the scope of involvement in gang activity, and he was permitted to

26   maintain alternative means of associating with his peers through such means available

27   to him in a maximum security prison; 3) Plaintiff's validation had a "positive impact on

28   guards and other inmates" as a proper use of resources to preserve their safety; and 4)

United States District Court
For the Northern District of California

1   there are no alternative means of avoiding the dangers presented by prison gangs, and

2   "waiting for mayhem or murder before validating a gang member is not an acceptable

3   alternative." (Mot. Summ. J. at 6-7.)  Plaintiff in opposition repeats his assertion that

4   the validation was based purely on an "innocent association with members of his own

5   racial group [and] geographic region (Southern Hispanics)." (Oppo. at 12.)

6       It is well established that the First Amendment right to freedom of association is

7   among the rights least compatible with incarceration, see Overton v. Bazzetta, 539 U. S.

8   126, 131 (2003), and such right "may be curtailed whenever the institution's officials, in

9   the exercise of their informed discretion, reasonably conclude that such associations...

10  possess the likelihood of disruption to prison order or stability," Jones v. North Carolina

11  Prisoners' Labor Union, 433 U.S. 119, 132 (1977).  As Defendants have shown,

12  Plaintiff's validation was not based on "benign association" but rather on evidence

13  showing that Plaintiff was involved with gang activity.  It is undisputed that the prison

14  has a legitimate interest in preserving the safety of its inmates and staff, which includes

15  preventing gang violence.  Furthermore, it cannot be said that Plaintiff's validation and

16  placement in the SHU was an "exaggerated response" as his right to association was

17  limited only to the extent necessary to protect himself and others.  Accordingly,

18  Defendants have shown that there is no genuine issue as to any material fact with

19  respect to this claim, and they are entitled to summary judgment.

20      **2.    Retaliation**

21      Plaintiff's second cognizable claim is that he was placed in the SHU in

22  retaliation for exercising his First Amendment right to file grievances and for "his

23  legitimate jailhouse lawyer activities." (Compl. at 30.)  "Within the prison context, a

24  viable claim of First Amendment retaliation entails five basic elements:  (1) An

25  assertion that a state actor took some adverse action against an inmate (2) because of (3)

26  that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

27  of his First Amendment rights, and (5) the action did not reasonably advance a

28  legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.

2005) (footnote omitted).  The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts.  See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, plaintiff must show a nexus between the two.  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).

In order to create a genuine issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was pretextual."  Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted).  A plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action.  Hartman v. Moore, 547 U.S. 250, 259 (2006).  The requisite causation must be but-for causation, without which the adverse action would not have been taken.

Upon a prima facie case of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of.  Id. at 260; Wilkie v. Robbins, 551 U.S. 537, 560 & n.10 (2007) (rejecting argument that an ill motive alone supports a retaliation claim; "proof that the action was independently justified on grounds other than the improper one defeats the claim.").  If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.  Hartman, 547 U.S. at 259.  "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored

United States District Court
For the Northern District of California

1    by some degree of bad motive does not amount to a constitutional tort if that action

2    would have been taken anyway." Id. (citations omitted)

3         As a threshold matter, Plaintiff has established as a matter of law that his conduct

4    - the filing of complaints or grievances - meets the core requirement of the retaliation

5    analysis, that is, that it is constitutionally protected under the First Amendment. See

6    O'Keefe v. Van Boenly, 82 F.3d 322, 325 (9th Cir. 1996) (stating that the right to

7    petition the government for redress of grievances extends to administrative arms and

8    units of the government). Defendants concede that Plaintiff meets the first and third

9    elements of a retaliation claim, i.e., that Plaintiff's validation and SHU placement

10   constitute adverse action, and that Plaintiff's litigation and use of the administrative

11   grievance procedures are protected conduct. (Mot. at 7, 8.) They argue that Plaintiff

12   has failed to meet the other elements.

13        As to the second element of retaliatory motive, Defendants argue that Plaintiff

14   fails to show a rational connection between his pursuit of the inmate appears process

15   and the investigation into his gang status. Plaintiff attempts to do so by alleging that the

16   February 2008 investigation was begun the day after Defendant O'Dell responded to

17   one of his inmate appeals. (Compl. at 30.) However, it is undisputed that Plaintiff has

18   regularly submitted inmate appeals over the years, and Defendants have shown that the

19   investigation into Plaintiff's gang status has been ongoing, beginning as far back as

20   2004 when he was first placed in ad-seg pending such an investigation. See supra at 3-

21   4. Furthermore, Plaintiff admits that he has been involved in jailhouse lawyer activities

22   for over five years, but fails to show a causal connection between such activity and the

23   gang validation.

24        As to whether Defendants' actions chilled Plaintiff's exercise of his First

25   Amendment rights, Defendants contend that there has been no such effect as Plaintiff's

26   ability to submit administrative grievances or file suit in court has not been impeded.

27   (Mot. at 8.) Defendants point out that Plaintiff was able to pursue an administrative

28   appeal and file the instant action even after his validation. (Id.) However, Plaintiff

United States District Court

For the Northern District of California

1    need not demonstrate a <u>total</u> chilling of his First Amendment rights in order to establish

2    a retaliation claim. See Rhodes, 408 F.3d at 568-69 (rejecting argument that inmate did

3    not state a claim for relief because he had been able to file inmate grievances and a

4    lawsuit). That a prisoner's First Amendment rights were chilled, though not necessarily

5    silenced, is enough. Id. at 569 (destruction of inmate's property and assaults on the

6    inmate enough to chill inmate's First Amendment rights and state retaliation claim, even

7    if inmate filed grievances and a lawsuit).

8         Nevertheless, even assuming Plaintiff's rights were chilled, his claim fails

9    because he fails to show the last element - that the action did not reasonably advance a

10   legitimate correctional goal. As discussed above, the prison has a legitimate

11   penological interest in preventing prison gang activity and in preserving the safety of

12   the institution. See *supra* at 7. Even if Plaintiff has successfully shown that he was

13   engaged in constitutionally protected activity and that the protected conduct was a

14   substantial or motivating factor for the alleged retaliatory action, Plaintiff must also

15   show that the retaliatory action advanced *no* legitimate penological interest. Hines v.

16   Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from

17   circumstantial evidence) (emphasis added). The prisoner bears the burden of pleading

18   and proving absence of legitimate correctional goals for the conduct of which he

19   complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison

20   officials under § 1983 for retaliation must allege that he was retaliated against for

21   exercising his constitutional rights and that the retaliatory action did not advance

22   legitimate penological goals, such as preserving institutional order and discipline).

23   Here, Plaintiff fails to meet this burden as he cannot refute that Defendants had

24   legitimate correctional goals for his gang validation. Accordingly, Defendants are

25   entitled to summary judgment on this claim.

26        **3.    Equal Protection**

27        Plaintiff claims that Defendants violated his right to equal protection when they

28   retained him in the SHU from February 3, 2004 to March 7, 2006, because he was a

1  "Southern Hispanic."  Specifically, Plaintiff cites a CDCR memorandum entitled

2  "Identification of Southern Hispanic Leadership" issued on November 27, 2000.

3  (Compl. at 33.)  He claims that Defendants discriminated against him on the basis of his

4  "membership in a protected class, racial group and geographic region." (Compl. at

5  166.)  Defendants argue that this claim is barred by the statute of limitations and

6  alternatively, that the claim is without merit. (Mot. at 9-10.)  The Court will assume the

7  claim is timely, and review the claim on the merits.

8          "The Equal Protection Clause of the Fourteenth Amendment commands that no

9  State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

10  which is essentially a direction that all persons similarly situated should be treated

11  alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting

12  Plyler v. Doe, 457 U.S. 202, 216 (1982)).  A plaintiff alleging denial of equal protection

13  under 42 U.S.C. § 1983 based on race or other suspect classification must plead

14  intentional unlawful discrimination or allege facts that are at least susceptible of an

15  inference of discriminatory intent.  Monteiro v. Tempe Union High School Dist., 158

16  F.3d 1022, 1026 (9th Cir. 1998).  To state a claim for relief, the plaintiff must allege

17  that the defendant state actor acted at least in part because of plaintiff's membership in a

18  protected class.  Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003).  Proof of a

19  discriminatory intent or purpose is required to show an equal protection violation based

20  on race.  See, e.g., Thornton, 425 F.3d at 1166-67 (mere indifference to effect of

21  decision on member of protected class not discriminatory intent; conclusory statements

22  of bias not sufficient to prevent summary judgment); Serrano, 345 F.3d at 1082

23  (plaintiff must produce evidence sufficient to permit a reasonable trier of fact to find by

24  a preponderance of the evidence that the decision was motivated by the plaintiff's

25  membership in the protected class to avoid summary judgment).

26          Defendants contend that the CDCR memorandum at issue was issued in response

27  to the February 23, 2000 riot at PBSP, as part of an effort to identify and segregate

28  "shotcallers," or influential gang members, responsible for fomenting prison violence.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   (Mot. at 10.)  They assert that "Southern Hispanics" in the memorandum does not refer

2   to a specific race of inmates, but rather, it identifies the gang affiliation of inmates

3   associated with the EME.  Defendants state that the criteria set forth by the

4   memorandum were not limited to the identification of Southern Hispanic inmates, but

5   that it also was relied upon as a basis for identifying and segregating influential gang

6   members from all races and gang affiliations.  (R. S. Marquez Decl., at 2, Ex. A.)

7          "Prisoners are protected under the Equal Protection Clause of the Fourteenth

8   Amendment from invidious discrimination based on race."  Wolff v. McDonnell, 418

9   U.S. 539, 556 (1974) (citation omitted).  Invidious racial discrimination such as racial

10  segregation, which is unconstitutional outside prisons, also is unconstitutional within

11  prisons.  See Johnson, 543 U.S. at 505-06.  Defendants have offered persuasive

12  evidence showing that the classification here was not based on race but rather gang

13  affiliation to the Mexican Mafia.  Nevertheless, an association to the EME was based to

14  some extent on racial classification.  A prison classification based on race is

15  immediately suspect and is subject to the same strict scrutiny as a racial classification

16  outside prison.  See id. at 508-10.  Prison officials must therefore demonstrate that the

17  race-based policy or action is narrowly tailored to serve a compelling state interest.  Id.

18  at 510-11; Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010) (applying Johnson

19  to racial lockdowns in response to prison disturbances).  Johnson did not rule out race-

20  based classifications and did not eliminate prison security as a reason for such

21  classifications, but instead determined that prison officials must demonstrate that race-

22  based policies are narrowly tailored to address a compelling government interest such as

23  prison security.  See Johnson, 543 U.S. at 511-13, 515 (remanding case for

24  determination of whether CDC's policy of temporarily segregating inmates by race

25  when they arrive in the prison system initially or are transferred to a new prison is

26  narrowly tailored to serve a compelling state interest).

27          A claim of racial discrimination under the Equal Protection Clause requires

28  demonstration of discriminatory intent.  Washington v. Davis, 426 U.S. 229, 239-40

1   (1976); <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194-95 (9th Cir. 1998).  Defendants

2   argue that since the procedures for placing him in the SHU were "facially neutral,"

3   Plaintiff is required to show that some "invidious or discriminatory purpose" underlies

4   the policy or conduct challenged.  (Mot. at 11, citing <u>Lee v. City of Los Angeles</u>, 250

5   F.3d 668, 686-87.)  Defendants contend that he fails to do so.

6       In opposition, Plaintiff asserts that the memorandum "speaks for itself," and that

7   he need not prove discriminatory intent as the memorandum is suspect on its face.

8   (Oppo. at 22, citing <u>Walker v. Gomez</u>, 370 F.3d 969, 973-74 (9th Cir. 2004) (plaintiff

9   need not prove discriminatory intent or impact of policy or practice he is challenging if

10  policy is suspect on its face; policy explicitly treating inmates differently by race suspect

11  on its face).)  In reply, Defendants point out that the memorandum specifically states

12  that "The inmate placement and due process issues will be adhered to per California

13  Code of Regulations, Sections 3336, 3337, and 3338." (Reply at 6.)  Defendants assert

14  that the memorandum merely clarifies the process "by which prison officials were able

15  to document and investigate activity suggesting an inmate's involvement in violent or

16  disruptive organizations," and that the decision to retain Plaintiff in the SHU "on the

17  basis of his involvement with such disruptive activity was consistent with CDCR

18  regulations." (<u>Id.</u>, citing Cal. Code Regs. tit. 15, §3341.5(c).)

19      Viewing the facts in the light most favorable to Plaintiff and assuming that his

20  placement in the SHU was based, at least in part, on a race-based classification, the

21  Court finds that the procedures were narrowly tailored to address a compelling

22  government interest, *i.e.*, prison security.  See <u>Johnson</u>, 543 U.S. at 511-13, 515.  The

23  Court has examined a copy of the memorandum, as submitted into evidence by

24  Defendants, and finds that its intent is clearly stated: "The purpose of this memorandum

25  is to provide a clear process for the documentation and identification of inmates that

26  actively participate in organized disruptive activities that cause conditions likely to

27  threaten institutional security." (Marquez Decl., Ex. A.)  The procedures set forth in

28  this brief two page memo are racially neutral and applies to "any inmate identified as

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    fomenting racial unrest and violence," which is supported by a reference to a separate

2    memorandum titled "Recommended Language for Documenting Inmates Suspected of

3    Violent Activities." (Id.) In accordance with the memorandum, Plaintiff was placed in

4    ad-seg pending investigation into his involvement with the EME in February 2003. A

5    few months later, Plaintiff was placed in the SHU after the Classification Committee

6    found that Plaintiff's "removal from the [general population] would further the

7    Department's goal of maintaining this prison in a safe and secure manner, as supported

8    in the investigative report findings" which detailed Plaintiff's "participation in

9    organized disruptive activities that are likely to threaten institutional security." (Trenary

10   Decl., Ex. A.) Plaintiff fails to show that his placement in the SHU in February 2004

11   violated his right to equal protection. Defendants are entitled to summary judgment on

12   this claim.

13       **4.    Due Process**

14       Plaintiff's final claim is that Defendants violated his right to due process because

15   his placement in the SHU was based on insufficient evidence and that Defendants failed

16   to follow proper gang validation procedures.

17       Changes in conditions of confinement may amount to a deprivation of a state-

18   created and constitutionally-protected liberty interest, provided the liberty interest in

19   question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87

20   (1995), and, in particular, where the restraint "imposes atypical and significant hardship

21   on the inmate in relation to the ordinary incidents of prison life," see id. at 484. In

22   Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that

23   disciplinary proceedings do not satisfy due process requirements unless there is "some

24   evidence" in the record to support the findings of the prison disciplinary board. The

25   Ninth Circuit requires that "some evidence" also support a decision to place an inmate

26   in segregation for administrative reasons. See See Toussaint v. McCarthy, 801 F.2d

27   1080, 1104 (9th Cir. 1986). This standard applies to placement in a SHU for gang

28   affiliation. Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (noting that any one

of three pieces of evidence -- a sheriff's department report that prisoner was a gang

member, a probation report that prisoner's codefendant was a gang member, and a

statement from a prison informant -- would constitute "some evidence"). The standard

is met if there was some evidence from which the conclusion of the administrative

tribunal could be deduced. See Toussaint, 801 F.2d at 1105 (citing Hill, 472 U.S. at

455). Ascertaining whether the standard is satisfied does not require examination of the

entire record, independent assessment of the credibility of witnesses or weighing of the

evidence. See id. Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached. See id.

      The Ninth Circuit also requires that the evidence relied upon by prison

disciplinary boards contain "some indicia of reliability," Cato v. Rushen, 824 F.2d 703,

705 (9th Cir. 1987), but has not directly considered whether a corresponding need for

evidentiary reliability exists when prison officials segregate an inmate for administrative

reasons.[2] Some district courts have extended the reliability requirement to the

administrative context, however, holding that "the evidence relied upon to confine an

inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy

due process requirements." Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal.

1995); see Jones v. Gomez, No. C 91-3875 MHP, 1993 WL 341282, *3-4 (N.D. Cal.

Aug. 23, 1993) (order denying summary judgment) (due process requires indicia of

reliability due to high risk of false information by informants, inherent prisoner conflicts

and necessity for independent factfinding by prison officials).

---

[2] If the information relied upon by the disciplinary committee are the statements of an unidentified informant, due process requires that the record contain: (1) some factual information from which the committee can reasonably conclude that the information was reliable and (2) a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987), cert. denied, 487 U.S. 1207 (1988). Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) in camera review of the documentation from which credibility was assessed. See id. at 186-87.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is

GRANTED. (Docket No. 58.) Plaintiff's claims against Defendants Matthew L. Cate,

Everett W. Fisher, Douglas McClure, R. S. Marquez, Richard J. Kirkland, Robert A.

Horel, M. Castellaw, L. Polk, M. A. Cook, M. J. Nimrod, S. Wheeler, K. L. McGuyer,

K. Brandon, Troy Wood, J. A. McKinney, David J. Barneburg, S. O'Dell, Del

Higgerson, J.R. McBride, Gina Brame Derrico, and T. K. Rosenkruns are DISMISSED

with prejudice.

This order terminates Docket No. 58.

DATED: _____9/29/1_____          _____
                                              EDWARD J. DAVILA
                                              United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


GABRIEL R. CORTEZ,

              Plaintiff,

   v.

MATTHEW L. CATE, et al.,

              Defendants.

_____/

Case Number: CV09-03021 EJD

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____9 / 29 / 11_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Gabriel Rudy Cortez J-76501
Pelican Bay State Prison
P. O. Box 7500
Crescent City, Ca 95532


Dated: _____9 / 29 / 11_____

              Richard W. Wieking, Clerk
              By: Elizabeth Garcia, Deputy Clerk