FILED

SEP 29 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL R. CORTEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>MATTHEW L. CATE, et al.,<br><br>    Defendants. | No. C 09-03021 EJD (PR)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br><br><br>(Docket No. 58) |

Plaintiff, a California inmate at the Pelican Bay State Prison ("PBSP") in Crescent City, filed a pro se civil rights action under 42 U.S.C. § 1983 against PBSP officials for allegedly unconstitutional acts. The Court reviewed the complaint pursuant to 28 U.S.C. § 1915A(a), and found four cognizable claims.[1] Defendants Matthew L. Cate, Everett W. Fisher, Douglas McClure, R. S. Marquez, Richard J. Kirkland, Robert A. Horel, M. Castellaw, L. Polk, M. A. Cook, M. J. Nimrod, S. Wheeler, K. L. McGuyer, K. Brandon, Troy Wood, J. A. McKinney, David J. Barneburg, S. O'Dell (sued as "S.O. Dell"), Del Higgerson, J.R. McBride, Gina Brame Derrico (sued as

---

[1] After the Court dismissed some claims and granted leave to amend deficiencies in other claims, Plaintiff filed notice that he wished to proceed solely on the four cognizable claims. (See Docket No. 18.) The case was reassigned to this Court on April 25, 2011. (See Docket No. 63.)

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.EJD\CR.09\Cortez03021_grant-msj.wpd

"Genna Brame Derrico"), and T. K. Rosenkruns have moved for summary judgment. (Docket No. 58.) Plaintiff filed an opposition, and Defendants filed a reply.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### B. Legal Claims and Analysis

In a lengthy complaint exceeding fifty pages with numerous attachments, Plaintiff detailed a history of alleged harassment from January 2004 up to and following his placement in the segregated housing unit ("SHU") as a validated prison gang member of the Mexican Mafia ("EME") in July 2008. (Compl. at 5, 20.)

The following facts are not disputed unless otherwise indicated. Plaintiff was first retained in the administrative segregation ("ad-seg") on February 3, 2004, pending an investigation of his association with the EME. On July 7, 2004, the Classification Committee placed Plaintiff in the SHU on the basis of his "ongoing involvement in activities that foment violence among [inmates] and endanger [inmates] and staff alike." (C. Trenary Decl., Ex. A.) There were two confidential memoranda filed in Plaintiff's central file, the first dated October 8, 2003 and the second January 20, 2004, which contain information connecting Plaintiff with the EME. (Id., Ex. B.) Plaintiff remained

in the SHU until March 7, 2006.

A formal investigation into Plaintiff's gang status was initiated on February 12, 2008, by the PBSP Institutional Gang Investigations Unit ("IGI"). The evidence in Plaintiff's central file of his involvement with the EME was comprised of four confidential memoranda, including the two mentioned above, which are summaries of statements given by informants identifying Plaintiff as an active EME associate. The third memoranda was dated January 29, 2007, and the fourth was dated January 23, 2008, just a few weeks before the investigation was initiated. Several of the informants identified Plaintiff as a member of the "mesa," a particularly influential group of EME associates which was "empowered by the EME to carry out the orders and enforce the will of the EME on the General Populations Yards at [PBSP]." (Id., Ex. B.) Each of these confidential reports was used as a "source item" in support of Plaintiff's validation as a gang member. (Id.)

On February 21, 2008, Plaintiff was informed of the source items through confidential information disclosure forms, and then given 24 hours to prepare for an interview with an IGI investigator to discuss the source items. Cal. Code Regs. tit. 15, § 3378(c)(6). On February 22, 2008, Plaintiff was interviewed by Defendants Sergeant D. Barneburg and Correctional Officer J. McBride. (Trenary Decl., Ex. C.) A formal validation package was submitted to the Office of Correctional Safety ("OCS") later the same day. The package included the source items and Plaintiff's written and oral responses. (Id.) Special Agents E. Fischer, T. Rosenrkuns, and D. McClure reviewed these items, and concluded that all four of the source items met the validation requirements. Plaintiff was validated as an EME associate on July 10, 2008. (Id., Ex. D.) Plaintiff was informed of the validation on July 30, 2008, and that he would be placed in the SHU as a consequence in accordance with Title 15, as being deemed a severe threat to the safety of the institution. Cal. Code Regs. tit. 15, § 3341.5(c). On that basis, Plaintiff was placed in the SHU for an indeterminate term.

Plaintiff submitted an inmate appeal on August 10, 2008, challenging his gang

validation and SHU placement. He complained that the CDCR had a practice of validating inmates on the basis of mere allegations of gang activity. He requested reversal of the validation, release from the SHU, and removal of the source items from his central file. (Trenary Decl., Ex. F.) The appeal was bypassed at the first level and denied at the second level. Plaintiff appealed to the Director's Level, which determined that proper procedures were followed and that there was sufficient evidence to support the validation. Accordingly, Plaintiff's appeal was denied at the Director's Level on January 5, 2009.

The Court found the following claims were cognizable: 1) Defendants violated Plaintiff's first amendment right to association; 2) Defendants placed Plaintiff in the SHU in retaliation for exercising his First Amendment right to file grievances; 3) Defendants violated Plaintiff's right to equal protection by discriminating against him on the basis of race; and 4) Plaintiff's placement in the SHU violates due process.

### 1. Right to Association

Plaintiff claims that his validation as a gang member violated his First Amendment right to association because he was validated on the basis of an innocent association with members of his own racial group, which "did not consist of and [was] not in furtherance of any illegal prison gang activity whatsoever." (Compl. at 41.) Defendants contend that this claim must be evaluated under the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987), which requires that Plaintiff show that there is no reasonable relationship between the regulation or conduct being challenged and the legitimate penological interests of the institution. Id. at 89.

Prison regulations that infringe a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see Pell v. Procunier, 417 U.S. 817, 822-23 (1974) (identifying four central penological objectives as deterrence (by making incarceration undesirable), protection (by quarantining criminal offenders), rehabilitation, and ensuring internal security of the prison facility).

The Supreme Court recognized in <u>Turner</u> that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. <u>Beard v. Banks</u>, 548 U.S. 521, 528 (2006). But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. <u>Id.</u> As <u>Overton v. Bazzetta</u> pointed out, courts owe "substantial deference to the professional judgment of prison administrators." 539 U.S. 126, 132 (2003). <u>Turner</u> reconciled these principles by holding that restrictive prison regulations are permissible if they are "reasonably related" to legitimate penological interests, and are not an "exaggerated response" to such objectives. 482 U.S. at 87.

The Supreme Court has identified four factors to consider when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." <u>Turner</u>, 482 U.S. at 89-90.

Defendants argue that Plaintiff's validation and SHU placement bears a "reasonable relationship" to the legitimate penological interests of the institution consistent with the <u>Turner</u> factors: 1) the prison has an obvious interest in deterring gang activity in order to subdue threats before violence occurs, which often requires preemptive measures such as gang validation; 2) Plaintiff's right of association was not limited beyond the scope of involvement in gang activity, and he was permitted to maintain alternative means of associating with his peers through such means available to him in a maximum security prison; 3) Plaintiff's validation had a "positive impact on guards and other inmates" as a proper use of resources to preserve their safety; and 4)

there are no alternative means of avoiding the dangers presented by prison gangs, and "waiting for mayhem or murder before validating a gang member is not an acceptable alternative." (Mot. Summ. J. at 6-7.) Plaintiff in opposition repeats his assertion that the validation was based purely on an "innocent association with members of his own racial group [and] geographic region (Southern Hispanics)." (Oppo. at 12.)

It is well established that the First Amendment right to freedom of association is among the rights least compatible with incarceration, see Overton v. Bazzetta, 539 U. S. 126, 131 (2003), and such right "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations... possess the likelihood of disruption to prison order or stability," Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 132 (1977). As Defendants have shown, Plaintiff's validation was not based on "benign association" but rather on evidence showing that Plaintiff was involved with gang activity. It is undisputed that the prison has a legitimate interest in preserving the safety of its inmates and staff, which includes preventing gang violence. Furthermore, it cannot be said that Plaintiff's validation and placement in the SHU was an "exaggerated response" as his right to association was limited only to the extent necessary to protect himself and others. Accordingly, Defendants have shown that there is no genuine issue as to any material fact with respect to this claim, and they are entitled to summary judgment.

### 2. Retaliation

Plaintiff's second cognizable claim is that he was placed in the SHU in retaliation for exercising his First Amendment right to file grievances and for "his legitimate jailhouse lawyer activities." (Compl. at 30.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.

2005) (footnote omitted). The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).

In order to create a genuine issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was pretextual." Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted). A plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. Hartman v. Moore, 547 U.S. 250, 259 (2006). The requisite causation must be but-for causation, without which the adverse action would not have been taken.

Upon a prima facie case of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of. Id. at 260; Wilkie v. Robbins, 551 U.S. 537, 560 & n.10 (2007) (rejecting argument that an ill motive alone supports a retaliation claim; "proof that the action was independently justified on grounds other than the improper one defeats the claim."). If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. Hartman, 547 U.S. at 259. "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored

by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." Id. (citations omitted)

As a threshold matter, Plaintiff has established as a matter of law that his conduct - the filing of complaints or grievances - meets the core requirement of the retaliation analysis, that is, that it is constitutionally protected under the First Amendment. See O'Keefe v. Van Boenly, 82 F.3d 322, 325 (9th Cir. 1996) (stating that the right to petition the government for redress of grievances extends to administrative arms and units of the government). Defendants concede that Plaintiff meets the first and third elements of a retaliation claim, *i.e.*, that Plaintiff's validation and SHU placement constitute adverse action, and that Plaintiff's litigation and use of the administrative grievance procedures are protected conduct. (Mot. at 7, 8.) They argue that Plaintiff has failed to meet the other elements.

As to the second element of retaliatory motive, Defendants argue that Plaintiff fails to show a rational connection between his pursuit of the inmate appears process and the investigation into his gang status. Plaintiff attempts to do so by alleging that the February 2008 investigation was begun the day after Defendant O'Dell responded to one of his inmate appeals. (Compl. at 30.) However, it is undisputed that Plaintiff has regularly submitted inmate appeals over the years, and Defendants have shown that the investigation into Plaintiff's gang status has been ongoing, beginning as far back as 2004 when he was first placed in ad-seg pending such an investigation. See *supra* at 3-4. Furthermore, Plaintiff admits that he has been involved in jailhouse lawyer activities for over five years, but fails to show a causal connection between such activity and the gang validation.

As to whether Defendants' actions chilled Plaintiff's exercise of his First Amendment rights, Defendants contend that there has been no such effect as Plaintiff's ability to submit administrative grievances or file suit in court has not been impeded. (Mot. at 8.) Defendants point out that Plaintiff was able to pursue an administrative appeal and file the instant action even after his validation. (Id.) However, Plaintiff

need not demonstrate a <u>total</u> chilling of his First Amendment rights in order to establish a retaliation claim. See Rhodes, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough. Id. at 569 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit).

Nevertheless, even assuming Plaintiff's rights were chilled, his claim fails because he fails to show the last element - that the action did not reasonably advance a legitimate correctional goal. As discussed above, the prison has a legitimate penological interest in preventing prison gang activity and in preserving the safety of the institution. See *supra* at 7. Even if Plaintiff has successfully shown that he was engaged in constitutionally protected activity and that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, Plaintiff must also show that the retaliatory action advanced *no* legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence) (emphasis added). The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). Here, Plaintiff fails to meet this burden as he cannot refute that Defendants had legitimate correctional goals for his gang validation. Accordingly, Defendants are entitled to summary judgment on this claim.

### 3. Equal Protection

Plaintiff claims that Defendants violated his right to equal protection when they retained him in the SHU from February 3, 2004 to March 7, 2006, because he was a

"Southern Hispanic." Specifically, Plaintiff cites a CDCR memorandum entitled "Identification of Southern Hispanic Leadership" issued on November 27, 2000. (Compl. at 33.) He claims that Defendants discriminated against him on the basis of his "membership in a protected class, racial group and geographic region." (Compl. at 166.) Defendants argue that this claim is barred by the statute of limitations and alternatively, that the claim is without merit. (Mot. at 9-10.) The Court will assume the claim is timely, and review the claim on the merits.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class. Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003). Proof of a discriminatory intent or purpose is required to show an equal protection violation based on race. See, e.g., Thornton, 425 F.3d at 1166-67 (mere indifference to effect of decision on member of protected class not discriminatory intent; conclusory statements of bias not sufficient to prevent summary judgment); Serrano, 345 F.3d at 1082 (plaintiff must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was motivated by the plaintiff's membership in the protected class to avoid summary judgment).

Defendants contend that the CDCR memorandum at issue was issued in response to the February 23, 2000 riot at PBSP, as part of an effort to identify and segregate "shotcallers," or influential gang members, responsible for fomenting prison violence.

(Mot. at 10.) They assert that "Southern Hispanics" in the memorandum does not refer to a specific race of inmates, but rather, it identifies the gang affiliation of inmates associated with the EME. Defendants state that the criteria set forth by the memorandum were not limited to the identification of Southern Hispanic inmates, but that it also was relied upon as a basis for identifying and segregating influential gang members from all races and gang affiliations. (R. S. Marquez Decl., at 2, Ex. A.)

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. See Johnson, 543 U.S. at 505-06. Defendants have offered persuasive evidence showing that the classification here was not based on race but rather gang affiliation to the Mexican Mafia. Nevertheless, an association to the EME was based to some extent on racial classification. A prison classification based on race is immediately suspect and is subject to the same strict scrutiny as a racial classification outside prison. See id. at 508-10. Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest. Id. at 510-11; Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010) (applying Johnson to racial lockdowns in response to prison disturbances). Johnson did not rule out race-based classifications and did not eliminate prison security as a reason for such classifications, but instead determined that prison officials must demonstrate that race-based policies are narrowly tailored to address a compelling government interest such as prison security. See Johnson, 543 U.S. at 511-13, 515 (remanding case for determination of whether CDC's policy of temporarily segregating inmates by race when they arrive in the prison system initially or are transferred to a new prison is narrowly tailored to serve a compelling state interest).

A claim of racial discrimination under the Equal Protection Clause requires demonstration of discriminatory intent. Washington v. Davis, 426 U.S. 229, 239-40

(1976); Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Defendants argue that since the procedures for placing him in the SHU were "facially neutral," Plaintiff is required to show that some "invidious or discriminatory purpose" underlies the policy or conduct challenged. (Mot. at 11, citing Lee v. City of Los Angeles, 250 F.3d 668, 686-87.) Defendants contend that he fails to do so.

In opposition, Plaintiff asserts that the memorandum "speaks for itself," and that he need not prove discriminatory intent as the memorandum is suspect on its face. (Oppo. at 22, citing Walker v. Gomez, 370 F.3d 969, 973-74 (9th Cir. 2004) (plaintiff need not prove discriminatory intent or impact of policy or practice he is challenging if policy is suspect on its face; policy explicitly treating inmates differently by race suspect on its face).) In reply, Defendants point out that the memorandum specifically states that "The inmate placement and due process issues will be adhered to per California Code of Regulations, Sections 3336, 3337, and 3338." (Reply at 6.) Defendants assert that the memorandum merely clarifies the process "by which prison officials were able to document and investigate activity suggesting an inmate's involvement in violent or disruptive organizations," and that the decision to retain Plaintiff in the SHU "on the basis of his involvement with such disruptive activity was consistent with CDCR regulations." (Id., citing Cal. Code Regs. tit. 15, §3341.5(c).)

Viewing the facts in the light most favorable to Plaintiff and assuming that his placement in the SHU was based, at least in part, on a race-based classification, the Court finds that the procedures were narrowly tailored to address a compelling government interest, i.e., prison security. See Johnson, 543 U.S. at 511-13, 515. The Court has examined a copy of the memorandum, as submitted into evidence by Defendants, and finds that its intent is clearly stated: "The purpose of this memorandum is to provide a clear process for the documentation and identification of inmates that actively participate in organized disruptive activities that cause conditions likely to threaten institutional security." (Marquez Decl., Ex. A.) The procedures set forth in this brief two page memo are racially neutral and applies to "any inmate identified as

fomenting racial unrest and violence," which is supported by a reference to a separate memorandum titled "Recommended Language for Documenting Inmates Suspected of Violent Activities." (Id.) In accordance with the memorandum, Plaintiff was placed in ad-seg pending investigation into his involvement with the EME in February 2003. A few months later, Plaintiff was placed in the SHU after the Classification Committee found that Plaintiff's "removal from the [general population] would further the Department's goal of maintaining this prison in a safe and secure manner, as supported in the investigative report findings" which detailed Plaintiff's "participation in organized disruptive activities that are likely to threaten institutional security." (Trenary Decl., Ex. A.) Plaintiff fails to show that his placement in the SHU in February 2004 violated his right to equal protection. Defendants are entitled to summary judgment on this claim.

### 4. Due Process

Plaintiff's final claim is that Defendants violated his right to due process because his placement in the SHU was based on insufficient evidence and that Defendants failed to follow proper gang validation procedures.

Changes in conditions of confinement may amount to a deprivation of a state-created and constitutionally-protected liberty interest, provided the liberty interest in question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," see id. at 484. In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board. The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons. See See Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th Cir. 1986). This standard applies to placement in a SHU for gang affiliation. Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (noting that any one

of three pieces of evidence -- a sheriff's department report that prisoner was a gang member, a probation report that prisoner's codefendant was a gang member, and a statement from a prison informant -- would constitute "some evidence"). The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Toussaint, 801 F.2d at 1105 (citing Hill, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. See id. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. See id.

The Ninth Circuit also requires that the evidence relied upon by prison disciplinary boards contain "some indicia of reliability," Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987), but has not directly considered whether a corresponding need for evidentiary reliability exists when prison officials segregate an inmate for administrative reasons.[2] Some district courts have extended the reliability requirement to the administrative context, however, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy due process requirements." Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); see Jones v. Gomez, No. C 91-3875 MHP, 1993 WL 341282, *3-4 (N.D. Cal. Aug. 23, 1993) (order denying summary judgment) (due process requires indicia of reliability due to high risk of false information by informants, inherent prisoner conflicts and necessity for independent factfinding by prison officials).

---

[2] If the information relied upon by the disciplinary committee are the statements of an unidentified informant, due process requires that the record contain: (1) some factual information from which the committee can reasonably conclude that the information was reliable and (2) a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987), cert. denied, 487 U.S. 1207 (1988). Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) in camera review of the documentation from which credibility was assessed. See id. at 186-87.

Defendants assert that the OCS properly determined that four source items in Plaintiff's central file evidenced his participation as an active member of EME. The source items were based on confidential reports by informants who identified Plaintiff as a member of the EME with a direct communication link to another validated EME associate. (Mot. at 13.) Defendants contend that each of these source items fit the criteria outlined by Title 15, Cal. Code Regs. tit. 15, § 3378(c)(8), and that any one of these source items provides sufficient evidence to meet the "some evidence" standard as each of them had sufficient reliability. (Id., citing Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990).)

In opposition, Plaintiff challenges the reliability of these source items and questions the accuracy of the information provided. In essence, Plaintiff would have this Court make an independent assessment of the credibility of these confidential informants and re-weigh the evidence. However, the only relevant question before this Court is whether there is any evidence in the record that could support the conclusion reached. See Toussaint, 801 F.2d at 1105. The four source documents constitutes such evidence, each having some indicia of reliability: the gang investigation chrono states for each source item that "the documentation meets the criteria for gang involvement as prescribed in California Code of Regulations (CCR) Title 15, Section 3378(c)(8)(H), Informant," which includes the requirement for classifying reliable confidential material under § 3321. (Trenary Decl., Ex. B.) Plaintiff's assertions that the information provided by the informants is false, even if true, does not entitle him to relief. The fact that a prisoner may have been placed incorrectly in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making. See Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983).

///

///

///

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. (Docket No. 58.) Plaintiff's claims against Defendants Matthew L. Cate, Everett W. Fisher, Douglas McClure, R. S. Marquez, Richard J. Kirkland, Robert A. Horel, M. Castellaw, L. Polk, M. A. Cook, M. J. Nimrod, S. Wheeler, K. L. McGuyer, K. Brandon, Troy Wood, J. A. McKinney, David J. Barneburg, S. O'Dell, Del Higgerson, J.R. McBride, Gina Brame Derrico, and T. K. Rosenkruns are DISMISSED with prejudice.

This order terminates Docket No. 58.

DATED: 9/29/11

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GABRIEL R. CORTEZ,

    Plaintiff,

v.

MATTHEW L. CATE, et al.,

    Defendants.

Case Number: CV09-03021 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 9/29/11, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gabriel Rudy Cortez J-76501
Pelican Bay State Prison
P. O. Box 7500
Crescent City, Ca 95532

Dated: 9/29/11

Richard W. Wieking, Clerk
By: Elizabeth Garcia, Deputy Clerk